# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CITIZEN DEVELOPER, LLC** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | CASE NO. 1:23-CV-00564-JPW |
| **SYSTEM SOFT TECHNOLOGIES, INC.** | § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant System Soft Technologies, Inc., ("Defendant" or "SST"), respectfully submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment on Plaintiff's Amended Complaint (ECF No. 12) Count I, Breach of Contract Claim.

# Table of Contents

I. FACTUAL SUMMARY ................................................................................................ 4

II. PROCEDURAL HISTORY ......................................................................................... 5

III. EXHIBIT LIST ............................................................................................................ 5

IV. ARGUMENT AND AUTHORITIES ........................................................................ 5

    A. The RAA's contains a valid and enforceable damages limitation clause ............................ 5

    B. Plaintiff's damages are precluded under the RAA's damages limitation clause ................. 8

    C. Alternatively, SST cannot recover more than the $240,000 per year Marketing Spend commitment. ........................................................................................................... 10

    D. Alternatively, Plaintiff's total recoverable damages are capped in the amount SST paid CD over a twelve-month period. ........................................................................................ 10

    E. Summary Judgment should be granted on Plaintiff's claims for attorney fees. ................ 11

    F. Summary Judgment should be granted on Plaintiff's claims for punitive damages. ......... 12

V. CONCLUSION ........................................................................................................... 13

# Table of Authorities

**Cases**

*AM/PM Franchise Ass'n v. Atl. Richfield Co.*, 584 A. 2d 915, 920 (Pa. 1990) .............................. 8

*Atlantic City Associates, LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed.Appx. 174, 179 (3d Cir. 2011). ........................................................................................................................... 9

*Barnes v. Gorman*, 536 U.S. 181, 187, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)........................ 13

*Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F.Supp.3d 560, 574 (E.D. Pa. 2020)..... 13

*Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017) ................................... 13

*Envirex, Inc. v. Ecological Recovery Associates, Inc.*, 454 F.Supp.1329, 1336 (M.D. Penn. 1978) ............................................................................................................................................... 8

*John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 704 (Pa. Super. 2003) ............................. 8

*K & C, Inc. v. Westinghouse Elec. Corp.*, 437 Pa. 303, 308-309, 263 A.2d 390, 393 (Pa. 1970)... 8

*McMullen v. Kutz*, 603 Pa. 602, 613 (2009).................................................................................. 13

*New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A. 2d 919, 921 (Pa. Super. 1989) .......................................................................................................................................... 8

*Philips-Van Heusen Corp. v. Mitsui O. S. K. Lines Ltd.*, 2002 WL 32348263, at *12 (M. D. Pa. Aug. 14, 2002) ........................................................................................................................... 8

*Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082, 1084 (Pa. 1998).................................................................................................................................. 10

*Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928, 932 (1984) ......................... 13

*Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 203-04 (3d. Cir. 1995).............................. 8

*Widmer Engineering, Inc. v. Dualla*, 837 A.2d 459, 467-68 (Pa. Super. 2003).............................11

# I. FACTUAL SUMMARY

Plaintiff Citizen Developer, LLC ("CD") is the developer and owner of the CitizenDeveloper Platform (the "Platform"). The Platform is a "no-code" software development program, which allows its users to create their own software applications without traditional coding language.

Defendant System Soft Technologies, Inc. ("SST") is a technology consultant who provides information technology solutions, including software, to its clients.

On April 1, 2021, CD and SST entered into a Reseller Appointment Agreement (the "RAA"). The RAA granted SST an exclusive right to market the Platform and its professional services to nine identified "Target Accounts," and it granted SST the non-exclusive right to market and sell the Platform to other potential clients.[1]

The RAA's intended term was from April 1, 2021, through April 1, 2024.[2] However, on October 6, 2023, CD unilaterally terminated the RAA.[3]

CD sues SST alleging that SST did not spend enough money marketing the Platform to the Target Accounts and to other potential clients. CD claims it has lost significant revenue and profits as a result.[4]

SST countersues for damages related to CD's early termination of the RAA. SST paid significant consideration to CD for a three-year licensing deal. CD cut that deal short by nearly

---

[1] RAA, Ex. B, at ¶ 2.1(e).

[2] *Id*. at p. 4 (definition of "Term").

[3] Oct. 6, 2023 Ltr from M. Kelly Tillery to Trent W. Rexing, Ex. E.

[4] Amend. Compl. [ECF No. 12], at Count I.

six months. Therefore, SST is entitled to a refund in proportion to the amount of the uncompleted term.

## II. PROCEDURAL HISTORY

Plaintiff filed this case on April 3, 2023, invoking the Court's diversity jurisdiction. The Commonwealth of Pennsylvania's substantive law applies.[5]

Fact and expert discovery have concluded. This case is currently set for trial on February 3, 2025.

## III. EXHIBIT LIST

SST relies on the following summary judgment evidence that is attached to its Motion for Partial Summary Judgment:

| | |
|---|---|
| Exhibit A: | Excerpts from Deposition of Calvin Fuerst |
| Exhibit B: | Reseller Appointment Agreement with Exhibits and Schedules |
| Exhibit C: | Declaration of Treff LaPlante |
| Exhibit D: | January 16, 2023, Letter from M. Kelly Tillery to David Quish |
| Exhibit E: | October 6, 2023, Letter from M. Kelly Tillery to Trent W. Rexing |
| Exhibit F: | Damages Expert Report of Professor David Reibstein |

## IV. ARGUMENT AND AUTHORITIES

SST moves for a take-nothing summary judgment on Plaintiff's Count I for Breach of Contract.

**A. The RAA's contains a valid and enforceable damages limitation clause.**

---

[5] RAA, Ex. B, at ¶ 6.9.

5

The RAA is comprised of a 13-page signed document, plus three exhibits, four schedules, and one amendment.[6] The 13-page signed document expressly incorporates all the exhibits and schedules:[7]

> 6.14 **Incorporation of Exhibits and Schedules**. The Exhibits and Schedules identified in this Agreement are incorporated herein by reference and made a part of this Agreement.

The RAA contains the following limitation of liability clause:[8]

> LIMITATION OF LIABILITY. NEITHER PARTY WILL BE LIABLE UNDER OR IN CONNECTION WITH THIS RESELLER AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR OTHERWISE, FOR LOST REVENUES OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, ENHANCED OR PUNITIVE DAMAGES, EVEN IF THE PARTY KNEW OR SHOULD HAVE KNOWN THAT SUCH DAMAGES WERE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY. EXCEPT AS EXPRESSLY OTHERWISE PROVIDED IN THIS SECTION 9, TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER PARTY MAY BE HELD LIABLE UNDER OR IN CONNECTION WITH THIS RESELLER AGREEMENT UNDER ANY LEGAL OR EQUITABLE THEORY, INCLUDING BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR STRICT LIABILITY, OR OTHERWISE, FOR MORE THAN THE TOTAL AMOUNT PAID BY RESELLER TO CITIZENDEVELOPER UNDER THIS RESELLER AGREEMENT DURING THE TWELVE MONTHS PRIOR TO THE EVENT GIVING RISE TO THE CLAIM. The exclusions and limitations in this Section 9 do not apply to claims pursuant to Section 8 (Infringement Indemnification) and Section 12 (Confidential Information).

The above-excerpted clause is conspicuous and unambiguous. It expressly states that "under any legal or equitable theory," including contract and tort, no consequential damages are recoverable. It expressly disclaims damages for "lost revenues" and consequential damages.

---

[6] RAA, Ex. B.

[7] *Id*. at p. 12.

[8] *Id*. at ¶ 9 of Exhibit C to RAA.

Under Pennsylvania law, damages limitations are almost always enforceable in commercial transactions. *K & C, Inc. v. Westinghouse Elec. Corp.*, 437 Pa. 303, 308-309, 263 A.2d 390, 393 (Pa. 1970) (holding consequential damages exclusion enforceable amongst commercial parties who "merely decided to allocate their risks in this way"); *John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 704 (Pa. Super. 2003) ("The law of the Commonwealth does not disfavor limitation of liability provisions."); *Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 203-04 (3d. Cir. 1995) (surveying Pennsylvania law and concluding that "limitation of liability clauses are not disfavored under Pennsylvania law; especially when contained in contracts between informed business entities dealing at arm's length, and there has been no injury to person or property."); *Envirex, Inc. v. Ecological Recovery Associates, Inc.*, 454 F.Supp.1329, 1336 (M.D. Penn. 1978) ("commercial parties of roughly equal bargaining power are free to shape their agreement in and way they desire, a [damages limitation] provision which has been agreed upon should be set aside only in the unusual, not the usual, case.").

Moreover, claims for lost profits, such as those made by Plaintiff, "are, by definition, consequential damages" and must be excluded under limitation of liability clauses that preclude recovery of such damages. *Philips-Van Heusen Corp. v. Mitsui O. S. K. Lines Ltd*., 2002 WL 32348263, at *12 (M. D. Pa. Aug. 14, 2002); *see also AM/PM Franchise Ass'n v. Atl. Richfield Co*., 584 A. 2d 915, 920 (Pa. 1990) ("Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach and include three types of lost profit damages: (1) lost primary profits; (2) lost secondary profits; and (3) loss of prospective profits, also commonly referred to as good will damages."); *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp*., 564 A. 2d 919, 921 (Pa. Super. 1989) (affirming judgment prohibiting

recovery of lost profits where the contract contained limitation of liability clauses that excluded liability for "any indirect, special, incidental or consequential damages.").

**B. Plaintiff's damages are precluded under the RAA's damages limitation clause.**

CD articulates no theory on how it was *directly damaged* (the only type of damages recoverable under the RAA) from SST not meeting the Marketing Spend commitment. As the Third Circuit has explained,

> Rather than turning on foreseeability, the difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collateral losses following the breach, in which case the damages are consequential.

*See Atlantic City Associates, LLC v. Carter & Burgess Consultants, Inc.*, 453 Fed.Appx. 174, 179 (3d Cir. 2011).

The Marketing Spend commitment represented the monetary value of SST's *own* marketing efforts—with no guarantee of results—to attract potential new business and new clients *to SST,* who would then re-sell the Platform. Meaning there was no direct benefit to CD that stemmed from SST's marketing efforts, only downstream revenues if SST was able to successfully market, *and sell to,* potential new clients. Put otherwise, the only benefit CD could have received under the RAA vis-à-vis the Marketing Spend is potential additional revenues, which CD is precluded from recovering.[9]

To be clear, this is not a typical breach of contract case where CD was *directly* damaged if, for example, *CD paid* to SST $240,000 per year for marketing services it never received. Rather, SST was under no obligation to directly pay any third-party, or to directly pay CD itself the $240,000 per year to market the Platform. Instead, SST committed to providing CD with $240,000

---

[9] *Id*. at ¶ 9 of Exhibit C to RAA.

per years' worth of marketing services. SST argues that it did so. Even assuming *arguendo* that SST failed to make the $240,000 a year in marketing spend, the RAA does not provide that CD would receive *any* additional consideration, on top of the $1,289,652 it paid CD for licensing rights, if SST did not meet the full Marketing Spend commitment in any given year. Therefore, CD does not and cannot provide any evidence of direct damages related to Marketing Spend.

Indeed, CD *itself* recognizes that its only potential damages arising from an alleged breach of the Marketing Spend requirement are consequential damages in the form of lost revenues. Plaintiff has retained an expert, Dr. David Reibstein, to opine that SST's alleged failure to internally expend $240,000 worth of marketing efforts per year has resulted in $28,149,345 in lost revenue to CD![10]

While SST certainly has qualms with both Dr. Reibstein's methodology and conclusion, the fact remains that the only damages calculated by Dr. Reibstein are lost revenues. Plaintiff has no other evidence of damages.

Furthermore, CD had a duty to mitigate its damages. *See generally, Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082, 1084 (Pa. 1998) )("[I]t is a general principal of contract law that the non-breaching party to a contract has the duty to reduce his damages, if he can reasonably do so."). The RAA did not prohibit CD from marketing the Platform on its own or retaining a marketing firm. If Plaintiff's expert is correct that just spending $240,000 on marketing per year will yield $28 million in revenue, then CD should have immediately engaged in alternative marketing efforts when it first believed SST was falling short of its commitment.

---

[10] *See* Reibstein Report, Ex. F, at pp. 14-15.

Since CD's only evidence of damages is unmitigated lost revenues, Plaintiff's Count I for breach of contract fails because lost revenues are not recoverable per the express terms of the RAA.

**C. Alternatively, SST cannot recover more than the $240,000 per year Marketing Spend commitment.**

As discussed above, SST contends that CD has suffered no direct damages from SST's alleged failure to meet the Marketing Spend commitment. However, to the extent the Court disagrees, then CD should be limited to no more than the delta between what SST spent on marketing and the $240,000 annual commitment.

The RAA only commits SST to undertake $240,000 per year worth of internal marketing efforts related to the Platform. Therefore, $240,000 per year, at most, is the direct value of the Marketing Spend commitment to CD. To hold otherwise would be to ignore the RAA's conspicuous and valid disclaimer of consequential damages.[11]

Moreover, CD should not be entitled to recover any damages related to Marketing Spend after it prematurely terminated the RAA. Once CD terminated the RAA, SST's Marketing Spend obligation also terminated. *See generally*, *Widmer Engineering, Inc. v. Dualla*, 837 A.2d 459, 467-68 (Pa. Super. 2003) (holding that a material failure of performance under the contract by one party discharges the other party from further performance). As the RAA was only in effect for two full years, CD's damages (if any) relating to Marketing Spend should be capped at $480,000, minus the amount actually spent by SST on marketing during this period.

**D. Alternatively, Plaintiff's total recoverable damages are capped in the amount SST paid CD over a twelve-month period.**

---

[11] RAA, Ex B, ¶ 9 of Exhibit C to RAA.

For the reasons discussed above, SST contends that CD has incurred no recoverable damages from SST's alleged failure to meet the Marketing Spend commitment in the RAA. Alternatively, CD should be capped at no more than $480,000 if the Court concludes that any unspent Marketing Spend are direct damages. But regardless of the type of damages (if any) the Court ultimately concludes CD may recover, the total amount of damages CD may recover cannot exceed $1,289,652.

The RAA limits Plaintiff's damages to "the total amount paid by reseller [SST] to Citizen Developer under this Reseller Agreement during the twelve months prior to the event giving rise to the claim."[12] Under the RAA, from April 1, 2021, through April 1, 2022, SST paid Citizen Developer a total of $1,092,163.75.[13] From April 1, 2022, through April 1, 2023, SST paid Citizen Developer a total of $197,488.25.[14] SST did not pay Citizen Developer any additional monies under the RAA from April 1, 2023 – October 6, 2023 (date Citizen Developer terminated the RAA). Plaintiff's maximum recovery under this case is thus capped at $1,289,652.

### E. Summary Judgment should be granted on Plaintiff's claims for attorney fees.

Plaintiff seeks recovery of its attorney fees.[15] Under Pennsylvania law, parties are generally not entitled to recover attorney fees in breach of contract claims unless there is an express statutory authorization, a clear agreement of the parties, or some other established exception.

---

[12] *See* RAA, Ex. B, ¶ 9 of Exhibit C to RAA.

[13] RAA, Ex. B, ¶ 2.2(a), (b) ($499,699 paid on Effective date, plus three quarterly installments of $197,488.25).

[14] *Id.* at ¶ 2.2(b) (final quarterly installment of $197,488.25 paid on June 2, 2022).

[15] Amend. Compl. [ECF No. 12], at p. 20.

*Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F.Supp.3d 560, 574 (E.D. Pa. 2020). This principle is known as the "American Rule". *Id.*

However, parties may contractually agree that the breaching party will pay the attorney fees of the prevailing party in a breach of contract case. *McMullen v. Kutz*, 603 Pa. 602, 613 (2009). Even when such a contractual provision exists, the trial court has the discretion to determine whether the claimed attorney fees are reasonable and may reduce the fees if they are deemed unreasonable. *Id.* at 615,

In short, because the RAA does not include an applicable provision providing for the recovery of CD's attorney fees in connection with its breach of contract claim, CD is not entitled to recover attorney fees and summary judgment is appropriate on such claims.

**F. Summary Judgment should be granted on Plaintiff's claims for punitive damages.**

Plaintiff seeks recovery of punitive damages.[16] Under Pennsylvania law, punitive damages are generally not recoverable in a breach of contract action. *Dehart v. HomEq Servicing Corp.*, 679 F. App'x 184, 189 (3d Cir. 2017); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928, 932 (1984) ("The law is clear that punitive damages are not recoverable in an action for breach of contract."); *see also Barnes v. Gorman*, 536 U.S. 181, 187, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) ("[P]unitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract.").

In this case, CD has limited its claims to breach of contract and makes no allegations of tortious conduct.[17] Additionally, the RAA expressly waives CD's claim for punitive damages

---

[16] Amend. Compl. [ECF No. 12], at p. 20.

[17] Stip. to Withdraw Claims [ECF No. 20].

under any legal theory.[18] Accordingly, summary judgment is appropriate on Plaintiff's claims for punitive damages and the Court enter a take-nothing summary on same.

## V. CONCLUSION

For the foregoing reasons, Defendant System Soft Technologies, Inc. respectfully requests that the Court enter a take-nothing summary judgment on Plaintiff's Count I claim for breach of contract Alternatively, SST requests that the Court hold that Plaintiff's breach of contract damages related to SST's Marketing Spend is capped at $480,000, minus any credits and offsets that Defendant may show itself entitled and that the Court enter a take-nothing summary on CD's claims for attorney fees and punitive damages. Alternatively, Defendant respectfully requests that Plaintiff's total recoverable damages from any claim that arises from the RAA cannot exceed $1,289,652, and that the Court enter a take-nothing summary on CD's claims for attorney fees and punitive damages.

                    Respectfully submitted,

                    **ANSA ASSUNCAO LLP**

                    By: /s/ *Ryan R. Corkery*
                        Ryan R. Corkery
                        State Bar No. 200570
                        ryan.corkery@ansalaw.com
                        1255 Drummers Lane, Suite 300
                        Wayne, PA 19087
                        Telephone: (267) 528-0750
                        Facsimile: (267) 528-0726

---

[18] RAA, Ex. B, ¶ 9 of Exhibit C to RAA.

**ANSA ASSUNCAO LLP**
Steven F. Gooby (Specially Admitted)
steven.gooby@ansalaw.com
100 Matawan Road, Suite 410
Matawan, NJ 07747
Telephone: (732) 993-9850

- and -

**MAYER LLP**
Trent W. Rexing (Specially Admitted)
trexing@mayerllp.com
750 North St. Paul, Suite 700
Dallas, TX 75201
Telephone: (214) 379-6900

*Attorneys For Defendant System Soft Technologies, Inc.*

November 27, 2024

**CERTIFICATE OF SERVICE**

I certify that Defendant's Memorandum of Law in Support of Its Motion for Partial Summary Judgment was served via the Electronic Case Filing System this 27th day of November 2024, upon the following:

M. Kelly Tillery
Bijan K. Ghom
SAXTON & STUMP, LLC
230 South Broad Street, Suite 1100
Philadelphia, PA 19102
ktillery@saxtonstump.com
bkg@saxtonstump.com

                                                  */s/Trent W. Rexing*
                                                  Trent W. Rexing